# DECLARATION

I, Paul B. Summerlin, a Task Force Officer with the Drug Enforcement Administration, United States Department of Justice, state under the penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that the following is true and correct:

1. I am a Task Force Officer with the Drug Enforcement Administration (DEA) and I am employed by the Person County Sheriff's Office as a Deputy Sheriff in the Investigative Division and have been so employed since February 2011. I have a total of fifteen years experience in law enforcement. During the time I have been a law enforcement officer, I have attended numerous law enforcement classes at the North Carolina Justice Academy and DEA, where I received training in narcotics enforcement. I have conducted and assisted in numerous narcotics investigations. Through training and experience gained during these investigations, I am familiar with the methods used by individuals involved in the trafficking of narcotics to conceal the proceeds of their unlawful activities.

2. The facts and circumstances set forth in this Declaration are based upon my personal knowledge and experience and on information provided by officers who participated in the events described below.

3. On January 28, 2011, Deputies from the Granville County Sheriff's Office (GCSO) were working a joint operation with the Person County Sheriff's Office (PCSO) on Highway 501 and N.C. Highway 49 South under a mutual aid agreement. Deputy



EXHIBIT A

Lappin with the PCSO was riding with Sgt. Spence with the GCSO in his marked patrol vehicle.

4. The Deputies were stationary at the corner of Frank Whitfield Road and N.C. Highway 49 South, Roxboro, North Carolina, when they observed a white 2001 BMW X5 sport utility vehicle approach their location. The vehicle appeared to be traveling over the posted speed limit of 55 miles per hour.

5. Once the vehicle passed their location, the Deputies pulled behind the BMW. While behind the vehicle they observed the BMW go off the right shoulder of the roadway and travel approximately 20-30 yards while on the shoulder. Deputies also noticed the right side brake lamp was inoperable when the brakes were applied.

6. Sgt. Spence initiated a vehicle stop near the intersection of Young's Chapel Church Road and N.C. Highway 49 South. Sgt. Spence approached the passenger side window of the vehicle to talk with the driver.

7. While at the passenger side front window, Sgt. Spence observed a revolver handgun on the dash. The driver, identified as Brian Hobart JONES, advised Sgt. Spence he had a handgun and Sgt. Spence had JONES give him the weapon. Sgt. Spence then gave the weapon to Deputy Lappin who removed the bullets and secured it.

8. While JONES looked for his license and registration, Sgt. Spence noticed a strong odor of air freshener coming from inside the vehicle but could not see any source of the odor. When JONES handed over his documents, Sgt. Spence noticed his right hand

2

was shaking.

9. Sgt. Spence asked JONES to exit the vehicle and have a seat in the front passenger seat of his patrol vehicle while he checked out his information. Deputy Lappin ran a check on the handgun and was advised the gun was not stolen. Deputy Lappin then took a seat in the back seat of the patrol vehicle behind Sgt. Spence.

10. Sgt. Spence and JONES were engaged in conversation about JONES' businesses. JONES stated he had a total of six Internet Cafes, but he just had partnership interests in a couple of them. Deputy Lappin asked JONES who his partners were and JONES stated he did not know who they were. Sgt. Spence then handed Deputy Lappin JONES' driver's license for a status check.

11. JONES advised Sgt. Spence he had come to Roxboro, North Carolina to check on his car that was being refurbished at Dream Works on Madison Avenue. Deputy Lappin had knowledge of prior criminal activity at that location.

12. JONES' driver's license came back clear, but an EPIC inquiry run concurrently indicated an open drug investigation. While finishing the warning ticket, Sgt. Spence asked JONES if there were any other weapons in the vehicle and JONES stated, "No." Sgt. Spence asked JONES if he had any large amounts of currency in the vehicle and JONES advised he had approximately $5,000.00. Sgt. Spence asked if there were any drugs, alcohol, or counterfeit goods in the vehicle and JONES replied that he did not have any. Sgt. Spence issued a warning ticket to JONES for unsafe movement

and right brake light and returned his license and registration. Sgt. Spence then asked for and was granted consent to search JONES' vehicle. JONES advised Sgt. Spence that he had no problem with the vehicle search and that his dad was a retired Winston-Salem police officer and that the deputies were just doing their jobs.

13. Sgt. Spence told JONES to remain in the patrol vehicle while he conducted the search and asked Deputy Lappin to contact a canine unit to respond to the location. Deputy Lappin moved to the front driver side of the patrol vehicle and sat with JONES while Sgt. Spence went to JONES' vehicle to begin the search.

14. Sgt. Spence began his search in the front passenger area. In a black plastic bag under the front passenger seat, Sgt. Spence found 3 DVDs including one titled "Trap Doom." On the cover was an individual holding several stacks of U.S. currency and photographs of drugs. "Trap" means a non-factory compartment built into a vehicle to hide drugs, guns, drug money, or all of the above. Sgt. Spence also discovered four stacks of $20 bills totaling $1,000 each and one stack of 8- $100 bills, and $200 in $20s in the console which JONES said he had pulled from the original $5,000.00.

15. Deputy C. Dixon (PCSO) and his canine "Renzo" responded to the scene. Upon arrival Deputy Dixon and Canine "Renzo" were asked to do an exterior sniff of the vehicle. Canine "Renzo" showed a positive alert for the odor of narcotics on the exterior of the vehicle. Deputy Dixon then put "Renzo" inside the vehicle where he ("Renzo") alerted to the odor of narcotics on the center console, where the stacks of currency

observed by Sgt. Spence were located.

16. In October, 2010 Deputy Dixon was selected to be a canine handler for the PCSO. Deputy Dixon was placed with veteran canine "Renzo." "Renzo" was purchased from Triangle K9 in Durham, North Carolina. "Renzo" was trained as a passive alert K9 and was trained in the areas of tracking, apprehension, handler protection, and detecting the odor of narcotics. "Renzo" was certified through the North American Police Work Dog Association in 2007.

17. Canine "Renzo" was a Malinois Shepherd, a breed specifically selected for their keen senses and ability to be trained to detect the odor of controlled substances. Canine "Renzo" has undergone frequent training for the detection of controlled substances in order to ensure and maintain proficiency. Canine "Renzo" was trained to passively alert on controlled substances after detecting the odor of narcotics. The controlled substances used to train "Renzo" were marijuana, cocaine, heroin, and methamphetamine.

18. Sgt. Spence also checked JONES' criminal record and learned that it included weapons and drug charges.

19. Sgt. Spence told JONES he was going to seize the currency and refer the matter to the DEA for further investigation. Sgt. Spence seized the U.S. Currency as drug proceeds and the money was taken to the PCSO.

20. On January 29, 2011, Deputy Newman and Canine "Bridgette" were called

5

to the PCSO for a canine sniff of the $5,000.00 in U.S. currency. Four paper bags were used with trash in bag 1, the U.S. currency in bag 2, bag 3 was empty, and a seat cushion was in bag 4. The bags were placed in the hallway against the wall 2.5 to 3 feet apart. Deputy Newman led "Bridgette" to the hallway where the bags had been lined up. Deputy Newman gave "Bridgette" the command to sit in front of the first paper bag and then gave her the command and hand signal to sniff for the odor of narcotics. "Bridgette" sniffed the first paper bag and moved on. "Bridgette" found interest in the second paper bag and put her nose to the bag and sniffed deep. Deputy Newman led "Bridgette" to the third paper bag, which she sniffed and moved on. Deputy Newman led "Bridgette" to the fourth paper bag, which she sniffed and stopped. Deputy Newman turned "Bridgette" around to perform a sniff in reverse order. "Bridgette" sniffed paper bags four and three and moved on. When "Bridgette" sniffed paper bag two, she knelt down, bit the paper bag, and alerted by pawing the paper bag twice.

21. In July, 2009 Deputy Newman was selected to be a canine handler for the PCSO. Canine "Bridgette" was purchased from Carolina Law Dogs, LLC in Lexington, North Carolina. Deputy Newman has received over 500 hours of "basic" training and instruction with canine "Bridgette." Deputy Newman successfully demonstrated the ability to properly deploy and maintain a police canine. Deputy Newman has effectively used this training to locate "concealed" controlled substances (marijuana, heroin, methamphetamine and cocaine), with the assistance of Canine Bridgette. In addition,

6

Deputy Newman has received more than 500 hours of instruction and training in narcotics enforcement, narcotics related investigations, criminal/drug interdiction, and legal updates.

22. Canine "Bridgette" is a German Shepherd, a breed specifically selected for their keen senses and ability to be trained to detect the odor of narcotics. During her basic training, Canine "Bridgette" proved to be reliable in using her olfactory senses to locate narcotics training aids of actual controlled substances (marijuana, heroin, methamphetamine, and cocaine). "Bridgette" undergoes frequent training for the detection of controlled substances in order to ensure and maintain proficiency. Canine "Bridgette" and Deputy Newman certify annually as a narcotics detection team with the North American Working Dog Association, with the most recent certification being September 2010.

23. Deputy Newman and Canine "Bridgette" have been involved in numerous narcotics investigations. Canine "Bridgette" has reliably detected large amounts of narcotics, to include, marijuana, heroin, methamphetamine and cocaine that had been concealed inside automobiles, residential houses, and elsewhere on several occasions since being placed into service as a police canine trained in narcotics detection.

24. Based on my training and experience I know that drug traffickers exchange drugs for cash and transport large sums of currency on their body and in their vehicles. I also know that they store proceeds from drug sales in an area that gives them access to the

funds for future drug transactions. Furthermore, I know based on my training and experience that drug traffickers deal in bulk cash in order to conceal their activities and to prevent the creation of a paper trail which results from the use of the conventional banking system.

25. The U.S. Currency was seized as drug proceeds and taken to the State Employees Credit Union where it was counted by bank personnel, who determined the total amount of the U.S. currency to be $5,000.00. A check was issued in that amount for deposit to the United States Marshal Service Seized Asset Deposit Fund.

26. DEA adopted the seizure of the $5,000.00 in U.S. currency on March 4, 2010, and began an administrative forfeiture proceeding. Notice of the forfeiture proceeding was published in the *Wall Street Journal* on April 4, April 11, and April 18, 2011. On June 9, 2011, DEA received a claim to the defendant $5,000.00 in U.S. Currency from Brian Hobart JONES. As a result, the administrative forfeiture process was terminated and the seizure was referred to the United States Attorney's Office on June 30, 2011 for judicial forfeiture.

CONCLUSION

27. Based upon the foregoing, your Declarant is of the opinion that there is probable cause to believe that the $5,000.00 in U.S. currency was furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds traceable to such an exchange, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6)

and 18 U.S.C. § 981(a)(1)(C).

This the 7th day of September, 2011.

_____
Paul B. Summerlin
Task Force Officer
Drug Enforcement Administration

9